IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KRISTY L. BANKS, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | 3:14-CV-00568-JO <br><br> OPINION AND ORDER |

JONES, J.,

Plaintiff Kristy Banks appeals the Commissioner's decision denying her application for supplemental security income under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Banks initially filed concurrent applications under Title II and Title XVI, alleging disability beginning in February 2007. Admin. R. 66. Banks later amended her alleged onset of disability to August 2010. Her insured status under the Act expired on September 30, 2008. Thus Banks no longer qualifies for Title II benefits and seeks review of only her Title XVI claim. Pl.'s Br. 2.

\\\

The ALJ applied the sequential disability determination process described in the regulations. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (describing the sequential process). The ALJ found Banks's ability to perform basic work limited by a moderate disc bulge, a mood disorder, and a substance abuse disorder. Admin. R. 68. The ALJ found that, despite these impairments, Banks retained the residual functional capacity ("RFC") to perform a range of light work with lifting or carrying up to 20 pounds occasionally and 10 pounds frequently, standing, walking, or sitting for up to 6 hours each during an 8 hour day, and limiting all postural activities such as stooping, bending, crouching, and so forth. The ALJ said she could perform only simple repetitive tasks and needed to limit her contact with the general public and her exposure to hazards. Admin. R. 71.

The ALJ compared Banks's RFC with the physical and mental demands of her previous job as a storage rental clerk and found that her RFC did not preclude performing that work as she had actually done it in the past. The vocational expert ("VE") testified that a person with Banks's RFC could perform the storage rental clerk job as it is generally performed in the national economy. Admin. R. 77. In addition, the VE testified that a person with Banks's RFC could perform other occupations in the national economy, such as document clerk, mail sorter, and office helper which represent hundreds of thousands of jobs in the national economy. Admin. R. 78. The ALJ concluded that Banks was not disabled within the meaning of the Social Security Act. Admin. R. 79.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under

this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Banks alleges the ALJ failed to assess her RFC accurately because he improperly discounted her subjective statements, the statements of her mother, Jayne Jones, and the statements of her treating mental health practitioners, Kristina Stewart, Q.M.H.P. and Gerald Peake, P.M.H.N.P.

### II. Credibility Determination

In her application, Banks said she stopped working because of bursitis in the hips, tendinitis in the shoulders, chronic pain from fibromyalgia, depression, anxiety, carpal tunnel syndrome, endometriosis, high blood pressure, a deformity of her right foot, and a deficiency of vitamin D. Admin. R. 320, 370. Banks said her medications made concentration difficult. Admin. R. 326. She estimated she could walk less than a block before needing to stop to rest and usually could not resume walking after resting. Admin. R. 331.

In her hearing testimony, Banks said that she stopped working in 2007 because she became pregnant and her chronic pain became worse. Admin. R. 9. She said she continued to be unable to work because she could not focus and she needed to be with her children to protect them from pedophiles. Admin. R. 10, 16. In addition, Banks said her hands no longer worked, due to nerve damage, and her feet, knees, and hips kept her from "being able to do stuff." Admin. R. 12. Banks said she got shaky and tearful on a daily basis and suffered from panic attacks about once a week. Admin. R. 14-15.

The ALJ believed that Banks's impairments could cause some degree of the symptoms she alleged, but did not believe her statements about their limiting effects to the extent she claimed limitations in excess of those in the RFC assessment. He did not believe her claim that she could not perform work within the limitations of the RFC assessment. Admin. R. 71.

An ALJ must engage in a two-step analysis when assessing the credibility of a claimant's subjective complaints. *Vasquez v. Astrue,* 572 F. 3d 586, 591 (9th Cir. 2009). First, the ALJ must determine if the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F. 3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Banks had satisfied the first prong.

Second, if the claimant has met the first prong and there is no evidence of malingering, the ALJ must make a credibility determination and can reject the claimant's testimony only by making specific findings supported by substantial evidence and providing a clear and convincing explanation. *Lingenfelter,* 504 F.3d at 1036. Here, there was affirmative evidence of malingering. The ALJ identified statements of treating sources suggesting that Banks engaged in malingering and misrepresentation. Admin. R. 75. For example, in April 2010, emergency department staff noted that when Banks thought she was not being observed, her symptoms disappeared. Her symptoms "seem[ed] to come and go" and were "not congruent with any sort of specific organic process [and seemed] entirely volitional." Admin. R. 75, 402, 405. In addition, at her consultative psychological evaluation, Jane Starbird, Ph.D., questioned Banks's credibility and suggested that secondary gain might be a basis of her symptoms. Admin. R. 75, 414.

\\\

-4-   OPINION AND ORDER

Despite finding evidence of malingering, the ALJ performed a full credibility determination. In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

Here, the ALJ considered proper factors in assessing Banks's credibility. He found that the objective medical evidence did not suggest the extreme limitations she claimed. Aside from the clinical observations that led to the suggestion of malingering, Banks's objective findings were generally mild. For example, in October 2010, Banks sought treatment for extreme constant pain in the neck and right arm. On examination, Banks had only generalized muscle tenderness, with full strength, reflexes, and sensation in all muscle groups and dermatomes. She received conservative treatment with pain medication and instructions to try massage with alternating heat and cold and gentle stretching. Admin. R. 73, 676. An x-ray study of the thoracic spine was completely normal. Admin. R. 560-61. An MRI study of Banks's cervical spine showed a moderate disk bulge at C5-6 causing a moderate narrowing of the spinal canal with the disk touching the left ventral aspect of the spinal cord. Admin. R. 73, 560. While significant, these findings are inconsistent with Banks's right-sided symptoms and the extreme weakness she claimed.

As discussed more fully below, the ALJ adequately considered the medical opinions of Banks's doctors and concluded the opinions did not support her subjective statements about the limiting effects of her symptoms.

\\\

-5-   OPINION AND ORDER

The ALJ found that Banks described activities "that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Admin. R. 75. For example, Banks reported she could take care of her three children at home without assistance while attending community college part time. Admin. R. 75. She could cook and clean and take her children outside to play. Banks could pay bills, count change and use a check book. Admin. R. 70.

Furthermore, the ALJ looked at Banks's social functioning. Banks's mother said that Banks talked on the phone and had visits from friends several times a month. She had no difficulty attending doctor appointments or school functions for her oldest daughter. Admin. R. 70. These social activities, while limited, support an inference that Banks can tolerate occasional contact with the public as the ALJ found in his RFC assessment.

The ALJ also considered Banks's work history, which shows she worked sporadically prior to her alleged disability onset date. Banks also "expressed no interest in working and expressed no regrets that she is very dependent on others." Admin. R. 75. This caused the ALJ to question whether Banks' continual unemployment was actually related to any medical impairment. Admin. R. 75. This inference was further supported by Banks's testimony that she stopped working due to pregnancy and did not want to return to work because she wanted to be home with her children. When a claimant stops working for reasons other than disability the ALJ may draw an adverse inference as to her credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Finally, the ALJ noted that Banks's drug seeking behavior discounted her credibility. Drug seeking behavior is a proper basis for discounting a claimant's credibility. *Edlund v. Massanari*, 253 F. 3d 1152, 1157 (9th Cir. 2001). The ALJ identified repeated episodes in which Banks sought to obtain medications in excess of her prescriptions. In 2008, the claimant tested positive for

benzodiazepine when she did not have a prescription for benzodiazepine. Admin. R. 73, 813. In 2010, Dr. Elder denied Banks's request for additional Oxycodone because it exceeded the limits of her pain medication contract. Admin R. 74, 652. Later, Banks again requested more medication from another physician who noted that Banks was clearly exceeding her contract with Dr. Elder. Admin. R. 74, 702. In 2011, Banks requested a refill of her Oxycodone prescription 13 days after receiving 560 tablets from a pharmacy. Admin. R. 74, 724. Banks blamed her boyfriend for taking the pain medication, but failed to produce evidence to support this claim. Admin. R. 74, 729.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Banks's subjective statements. His reasoning is clear and convincing and the credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

### III.   Lay Witness Statement

The ALJ considered the testimony and the 2008 third party function report submitted by Banks's mother, Jayne Jones ("Jones"). At the hearing, Jones said she thought Banks experienced extreme anxiety and turned into a "basket case" when she was around people. Admin. R. 23. Jones also testified that Banks had a hard time concentrating on her school work. Admin R. 24. She reported that Banks could not get comfortable lying down or sitting because of pain. Admin. R. 295. Jones also said that Banks was a great mom and that the kids were well adjusted. Admin. R. 19. In her function report, Jones said Banks was up with her children every morning and helped get her oldest daughter ready for school. Admin. R. 77. She also reported that Banks prepared meals on a daily basis and could walk a couple of blocks before resting. Admin. R. 77.

\\\

The ALJ found Jones generally credible in describing the activities she observed, but found her statements about Banks's limitations not fully credible to the extent they were not based on her own first hand knowledge.

An ALJ must consider the testimony of a lay witness, unless the ALJ gives reasons germane to the witness, for discounting the testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). An ALJ need not clearly link the reasons to his determination that the lay witness testimony should be discounted, as long as he notes germane reasons somewhere in the decision and they are supported by substantial evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ believed Jones's observations but discounted her statements about limitations that were based on Banks's subjective complaints, such as Banks's ability to walk only a couple of blocks before stopping, her level of anxiety around people, her difficulty concentrating and her discomfort when sitting. When an opinion is premised on subjective statements, that opinion is no more reliable than the subjective statements which it relies on. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ can properly disregard an opinion based on subjective statements when the ALJ has already discounted those subjective statements. *Fair v. Bowen*, 885 F. 2d 597, 605 (9th Cir. 1989).

This reasoning provides an adequate basis for the ALJ's evaluation of the Jones's testimony and lay witness report. *Valentine*, 574 F.3d at 694; *Lewis*, 236 F.3d at 512. The ALJ's interpretation of Jones's statements is supported by inferences reasonably drawn from the record, and will not be disturbed. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

## VI.     Medical Opinions

Banks claims the ALJ erred in discrediting the statements of treating sources Kristina Stuart, Q.M.H.P. and Gerald Peake P.M.H.N.P. Stuart and Peake concluded that Banks had moderate and marked limitations in various areas of mental functioning and that Banks could tolerate only low stress work. Admin. R. 76. They opined that Banks would be absent more than three times a month if she were working a normal work schedule. Admin. R. 76. The ALJ attributed some weight to the opinions of Stuart and Peake. He gave less than full weight however, because he found them inconsistent with the record as a whole.

The Commissioner's regulations distinguish between acceptable medical sources, such as licensed physicians and psychologists, and other medical sources, such as counselors and nurse practitioners. An ALJ may disregard the opinions of "other medical sources" so long as the ALJ gives reasons germane to each witness for doing so. *Turner v. Comm'r Soc. Sec.*, 613 F. 3d 1217, 1224 (9th Cir. 2010). Even a single reason may suffice. *Valentine*, 574 F.3d at 694.

The ALJ found the opinion of Stuart and Peake inconsistent with the record as a whole, which indicates that Banks retains the mental capacity to perform simple repetitive tasks involving limited contact with the general public. For example, Banks had no difficulty caring for her children, providing meals, and keeping a clean household on a daily basis without taking days off. Admin. R. 8. Stuart and Peake questioned Banks's ability to concentrate, but Jones said that Banks can pay attention as long as she needs to. Admin. R. 299. Banks can concentrate sufficiently to take community college classes. Admin. R. 70. Such inconsistencies provide a proper basis to discount the opinion of an "other medical source." *See Rollins v. Massanari*, 261 F. 3d 853, 856 (9th Cir. 2001) (ALJ provided a legitimate reason for discounting a medical restriction that was "inconsistent

with the level of activity that Rollins engaged in by maintaining a household and raising two young children, with no significant assistance"). In addition, it appears Stuart and Peake relied on Banks's subjective description of her limitations in forming their opinion. The ALJ provided adequate reasoning germane to Stuart and Peake for discounting their opinion of Banks's limitations.

## CONCLUSION

Banks's assignments of error cannot be sustained. Accordingly, the Commissioner's final decision is AFFIRMED.

DATED this 27th day of July, 2015.

Robert E. Jones, Senior Judge
United States District Court

-10-   OPINION AND ORDER